Good morning. May it please the court. Maureen Alger appearing on behalf of the petitioner, Wang Zanjing. The petitioner is a Christian of Korean ethnicity who is persecuted in China because of his religion and his ethnicity. The standard of review for an adverse credibility determination is substantial error. However, each and every reason offered by the petitioner is sufficient evidence that the petitioner is a Christian. The opinion of the immigration judge in support of her adverse credibility determination must be examined by the court and must meet three criteria. First, I think, let me, you don't have a lot of time and I think that we're pretty aware of all of that. I want to, the one, so on the adverse credibility, obviously if one is good, then that's difficult for your case, if not fatal for your argument. But the one that I'd like you to talk about is the letter from the pastor that had his phone number, his personal phone number on, was not on church letterhead, and the IJ seemed to be terribly troubled by that. And since he's claiming persecution on the basis of religion, his religion is obviously really is central and it goes to the heart of the claim. What, tell me about that. Because the IJ obviously felt that it was fake. And, you know, tell me about why that doesn't go to the heart of the claim and what his explanation was or, you know, how that came about. Because he claimed to be a deacon as well, and I noticed elsewhere in the testimony that he was asked about, and he said he didn't do any church business at home, and so what was his explanation and why doesn't that, you know, why isn't that enough? Well, first I'd like to point out that there are numerous errors with many of the reasons provided by the immigration judge. Obviously if one of the reasons provided by the immigration judge is supported by the record and permissible and goes to the heart of the matter, that would be a problem for us. Right. And some of the others are more problematic in my mind, but that one really is kind of sticking in my craw here. Yes. And one of the issues with answering the question is that the judge did not ask the individual, the petitioner, to clarify that, and as a result he was not able to provide the explanation. So the answer to that would be outside of the record. However, there was a reasonable explanation regarding the phone number. My client would have testified that the reason that the phone number was the same as his home number was he had put the phone number of the person in the congregation who was able to speak English on both his application and the pastor had put the person who spoke English in the congregation on the letterhead. That was because both the pastor and Mr. Jean assumed that if someone were to contact them, they would need to speak with someone in English, and so that information could have been provided. If the immigration judge had alerted the petitioner. You mean it was not, in fact, his phone number either? It's not clear to me whether, I don't know whether it was his phone number or whether it was somebody else's phone number. That's not in the record, but the explanation that he provided when we spoke with him was that that was the phone number of the person who could speak English. I'm not sure if that was his roommate or someone else in the congregation. It's not in the record. All of the reasons given by the IJ, some of them aren't even valid, that he doesn't understand the Christian church. Every answer he gave there was correct. In fact, he knew more about, for example, when Easter was than many Catholics I know. And being a practicing Catholic and having a University of Notre Dame law clerk just starting, we were examining this. And so a lot of the reasons, almost all of them, I found really suspect. And if you go back and you read the transcript, a lot of it also was caused by the translation problems and speaking over each other and that sort of thing. There was no confusion between Easter and Christmas, but a letter. And given, I gather he was the pastor, was local. I mean, not that there's a requirement of corroboration, but it could have easily, he could have had more data to support that or corroborate it. So maybe you ought to speak a little bit more about that aspect of it. It may have been a poor strategic decision by his attorney not to have those witnesses present. However, that evidence was not required. And frankly, it was not to be expected that whether he was actually a Christian would have been one of the central issues. Well, he was claiming persecution on account of being a Christian in China. Yes, but these were not witnesses who had any evidence, any knowledge of whether he had been persecuted in China. Well, but they have knowledge of whether. I.J. says, I don't think you're, I mean, some comment about, I don't think you're a Christian or whatever. I don't believe that. And so obviously, it's front and center. If you're not a Christian, you can't, that goes to the heart of that you would have been persecuted based on being a Christian. Because if you look at everything about what's, if he's, the story that he tells about in China, if he's credible, I think that's enough to establish past persecution. But if he's not a Christian, then that goes to the heart and it casts whole doubt on the whole rest of the story. So that all goes. Absolutely, Your Honor. So, but, you know, it doesn't, you know, I suppose if I brought people from my church and said that I was there every Sunday and that, you know, that I'm a Catholic and this, that and the other, well, okay, that doesn't, you know, it doesn't say I took the Lord as my personal Savior. But, you know, but it's pretty good evidence. If they see me there every Sunday, they see me there on Easter and all of that and this. And so that's, that's what we're talking about. I understand, Your Honor. And it certainly would have been useful evidence. I certainly do not dispute that. However, it was not required. And I don't believe it goes to whether he had knowledge of the Christian doctrine. There was plenty of information in the record to support the fact that Mr. Jin knew, knew much information about the Christian faith. And so any inconsistency as to this particular letter or issues as to this particular letter do not go to whether he was a Christian. There's plenty of other evidence in the record that he had knowledge of the Christian faith. It may be that the immigration judge had some question about the letter, but the letter was not required. If there had not been an adverse credibility determination, the petitioner's testimony would have been enough. And there were reasonable explanations for both the phone number issue. Churches do have letterhead and that, you know, that, so, you know, I guess, I mean, he says he doesn't do any church business at home. So I guess the issue was he given, you know, when, what in the record puts him on notice that the court doesn't believe that that's from the church? I believe that the immigration judge only made that comment. I do not believe that this petitioner is a Christian. I believe she used the word, by any stretch of the imagination, only in her opinion. I don't believe that that was stated during the course of the testimony. And so Mr. Jin, the petitioner, was not on notice during the testimony that she did not believe he was a Christian. And so if she had concerns about the letters or if she had concerns about whether he was actually a Christian, she should have raised it during the course of the testimony and given him an opportunity to respond and to clarify. In particular, to provide information about the letter and exactly why the phone number was there. As I said, he did provide an explanation when I spoke with him about it, about that being the number of the person who could speak English, so who could be responsive if anyone called. And in regards to the letterhead, the church's name and address and the phone number were provided at the top of the letter. I would consider that to be letterhead. I don't know what the original paper looked like, but there certainly is no requirement that any corroborating evidence be provided on any particular type of piece of paper. So I believe that the problems with the letter are minor. I believe they don't go to the heart of the claim. And I believe they are explainable. And I also believe that Mr. Jin was not provided an opportunity to provide additional information and he was not put on notice that there was indeed a question as to his Christianity. And in addition, there was plenty of other evidence in the record that supports that he did, in fact, have pretty advanced knowledge of the Christian faith and of Christian doctrine in particular. And there's no other reason in the record to suggest that he was not a Christian other than the question about the letterhead and perhaps questions that the judge had about some testimony that at most could be considered vague, but certainly not inconsistent and certainly not indicating that the petitioner did not have knowledge of the Christian faith. I just – I think you've made some very good points in your brief, but I think it really boils down to credibility because the judge had to determine whether or not she believed him. And that would go to either issue, whether or not he was a Christian or as a Christian, whether or not he was subject to this kind of persecution. He's obviously not the only Christian in China. And so the credibility issue is really the focus, whether you look at issue one or issue two. And the judge made a decision based on the circumstances as she observed them, and we found some inconsistency there, that generally she didn't believe him. And that's part of the issue we're forced with looking at her credibility decision. And the law suggests we have to give considerable deference to that. So what do we do with that? There is obviously deference to an immigration judge's determination of credibility, and in particular to demeanor. But the immigration judge needs to provide reasons for the adverse credibility determination that are supported by the record and are appropriate. And the immigration judge did not do so. We could go through each of the individual reasons. There was no mention made of the fact that the initial passport was forged as well. That didn't seem to come up in the record at all, but everyone acknowledges that it was a forged passport that he was on. Yes, he did use a passport initially that did not have his name on it, but that is not typically found to be a basis for adverse credibility under the law of the circuit. Unless maybe some other document is also alleged to be forged, and maybe it can be considered in that context. But it wasn't. It didn't appear to be come up in that one. And I don't think that there are allegations that any other documents were forged. The immigration judge certainly raised some questions, some of which were answered in the testimony, some of which the petitioner was not afforded an opportunity to explain, and we've tried to explain as much as possible. So the I.J. as to the age discrepancy just flat out got it wrong. The I.J. absolutely, the immigration judge got that wrong. The immigration judge used her own partial knowledge of how birthdays are calculated in China, and based her calculation on her own speculation, she was absolutely incorrect as to how birthdays are calculated. I can go through that if you'd like, but it seems the Court's familiar with that. Yeah, I think that was wrong. And then, I mean, his story of being, I mean, certainly if you believed his story of being beaten twice, once having to do with his Korean ethnicity and once having to do with Christian, that would amount to persecution, but that would require going through all these reasons by the I.J. and saying none of them are substantial evidence. That's right. And, Your Honor, as I've already mentioned, what we see in looking at this particular opinion is that there are not only numerous errors, numerous factual errors made by the judge, numerous errors in applying the law of the circuit, but there are many of the individual reasons are wrong for multiple reasons. So you not only have a list of reasons that are improper, but there are many bases for which the reasons are improper. The immigration judge here made so many mistakes. The opinion is truly rife with error, and it would be a travesty of justice to let an opinion with so many errors stand. All right. I don't think you can, so you're well over your time. Thank you, Your Honor. Good morning. Good morning. May it please the Court, Breanna Strickland on behalf of the Respondent, the Attorney General. This Court should affirm the agency's decision and deny the petition for review because Mr. Jim failed to demonstrate that the record compels a finding that he's credible. The immigration judge did give specific and cogent reasons to support her adverse credibility determination. The immigration judge gave a lot of reasons, but they're not all valid. I mean, I think the strongest one is the letter issue, that he wasn't given an opportunity to explain that. It wasn't even really discussed in the hearing. It wasn't until the I.J. issued her decision that she mentioned that. We respectfully disagree with that point. Petitioner argued that if the immigration judge was concerned about this, she could have raised it in the testimony and allowed an opportunity to respond to these discrepancies in the letter. And she did. For example, the telephone number, which this Court is clear, there was the same number listed on the asylum application, as is the church's. The immigration judge asked Jim directly if either him or his roommate, who is the church elder, if either of them conducted any business for the church within their house. I know she asked that question, but that doesn't really go to why he might put the same phone number on the asylum application and the church letterhead. If they're conducting, the letterhead of the church has the similar phone number. If they were doing any business, that would explain the discrepancy. Why don't you just ask? These two phone numbers are the same. So that leads me to believe that you're fabricating one or both. I mean, obviously, the immigration judge could have rephrased it in a way that was more direct, but that's not. And when you're talking to someone who doesn't speak English, you might want to be really clear on your questions. And that's understandable, but in this instance, the law is whether the petitioner is given an opportunity to explain the discrepancy, and that would have given an opportunity. He responded, no, no, no, no, no, emphatically. The immigration judge asked twice more in two different ways. Are you sure? Was there nothing that was conducted from the business? Well, did the immigration ever say, I don't think that this letter is legitimate? This doesn't, you know, it doesn't have letter. It's not on letterhead. Churches have letterhead, and it also has the same number as your application. Was it ever confronted in that? I mean, that would be, if you're going to ding someone and say, hey, you submitted a fake letter, they're supposed to be given an opportunity to explain that. And the immigration judge, again, didn't make an express determination that the letter was fraudulent. There was no express finding in that regard. There was a lot of discrepancies and inconsistencies. Now, although the immigration judge did not in the testimony say those specific words, the immigration judge may not have actually had to in that particular instance because there's also another discrepancy regarding the date. And Petitioner's Counsel brought up, on their own, on direct, brought up this discrepancy and allowed the petitioner to try and explain it, which he could not. The date was that whether or not Jim became a deacon. And in his testimony, he became a deacon in January 2004. However, in the letter it states that he became a deacon in July 2003. And he explained that and said that was a typo. Actually, just to clarify, reading from the transcript generally, he was directly asked, are you aware that the letter written by our pastor stated that you would become a deacon in July 2003? He was asked further point blank, can you explain this? And he said, actually, it is the pastor that made the mistake. And the pastor was July 2003. But then he went back and reverted and said, and contradicted himself and said, actually, I participate in this church in July 2003. So he flip-flopped on the subject. Ginsburg. No, no. What he's saying is that he participated in the church in 2003, that he wasn't a deacon until 2004. Even if that is a plausible explanation that this Court would find if it was reviewing the facts on the first time, it doesn't concern us. Well, what I'm just suggesting is that if you want to find someone not credible, you could pick on, you could seize on that and say, aha, he's lying. If you're objective and open-minded, you could say, well, this is a plausible explanation for that. And the immigration judge sitting there had also numerous other inconsistencies, and that may have, you know, had no way of knowing. You know what really troubles me the most about this case from the other side? Yeah. I mean, from the petitioner's side, it's the letter and the phone number and everything, and I'm still wrestling with, well, did he have an adequate opportunity to explain that. From your side, what really troubles me is that a lot of the things that the IJ cites are flat-out wrong, like the Christian information. She says he doesn't, by any stretch of the imagination, know anything of that. But every answer he gave was correct. And, in fact, he knew more about Easter and its relationship to the lunar cycle than I knew. And I've been a Catholic all my life and celebrate Easter. So I'm thinking he actually does know something about this religion. And so that answer is wrong. And then the year of birth, she gets all wrong. I don't know if she or he or I don't know who the IJ was, but calculates that all wrong. And there's several other things that just the discrepancy with how the police came into the door of the home service, I still can't for the life of me figure out what's the discrepancy? Did they ring the bell or did they shout out or not shout or just shout? What's the discrepancy here? And I can understand the Court's concern with that. And even if this Court did find, though, that there are numerous things that either it wouldn't agree with or don't go to the heart of the claim or, for whatever reason, doesn't support or isn't supported by the record, it's still not enough to grant the petition for review because, in this case, all you need under the case law of this circuit is one thing that goes to the heart of the claim. That's the inconsistency. This is pre-real ID or post? This is pre-real ID. Pre-real ID. And so in that regards, there are multiple ones. There's also another internal inconsistency in Jin's testimony. Again, his claim is twofold, one on ethnicity, of his Korean ethnicity, and the other on his Christian religion. And after an altercation on the taxes, his claim is that the officials for the tax threw a fan at him, injuring his finger. But he first testified, I went to the hospital several days. However, later when asked, and how long did you have to stay in the hospital for, Jin denied staying in the hospital altogether and said, I cannot stay in the hospital. And, again, this is another inconsistency that does go to the heart of the claim because it's why he fled. It was how he was persecuted. And, again, there was no explanation for why this occurred. I would also like to suggest to the Court that under this Court's case law, when the trier of fact either does not know what to believe or does not believe the applicant, then a failure to corroborate can be fatal. And that's something that happened in this case to the extent that the immigration court and the church that Jin purportedly went to were in the same city. And the immigration judge properly faulted Jin for not providing a witness to basically corroborate his Christian claim that he attended this church. It would have been useful to call the pastor who's in the same city. And if not, if the pastor was out of town, would you get him? And I would say that's true. But if you think that you have a legitimate letter from your pastor, you think you've established that. So did the immigration judge say, I think this letter's a fake, tell me more about it? Well, Petitioner's counsel, obviously because on direct, so at the front end of proceedings, questioned him about the discrepancy, the date discrepancy in the letter. So counsel was aware of that. Now, keep in mind that Petitioner had several months to prepare for this hearing, and it's their burden to prove their claim in a credible manner. So, you know, Petitioner's counsel must have known or at least had reasonable opportunity to know of this discrepancy if they presented it on direct. And for knowing that the hearing was several months, it wouldn't be improper to require maybe his roommate, who was a church elder, to come in and also corroborate his claim. But you know what? Why does that even matter if he's already, if he establishes his knowledge of the religion through his testimony about the religion? That's a, it matters because there's, an issue was raised about his credibility. So on the very front end, the immigration judge noted the date inconsistency about whether or not he spent any time in the hospital, was actually hospitalized. Then next, there was another inconsistency regarding the letter. So now you have multiple inconsistencies. Where? AR 66 to 67 in the testimony. That's not really the front end, but 66 to 67? It was one of the first issues because he was presenting his claim based on ethnicity first and then the Christian religion claim. But from there, you have that inconsistency followed by this letter. Which, I'm sorry, I'm not following you. Which inconsistency? He testified, I went to the hospital several days. And then he was asked later, and how long did you have to stay in the hospital for? He said, I did not, I didn't spend any time in the, I was not in fact hospitalized. I did not overnight stay in the hospital. So he said, I cannot stay in the hospital. What's the inconsistency? I went to hospital several days. Yeah, so in one instance, he's in the hospital claiming that he's been there for several days hospitalized. I suppose you could read it that way, but it could also be that he went back to the hospital several, you know, went one day and then had to go the next day and then had to go the next day. But he was never actually admitted into the hospital, which he clarifies. I see that I'm running out of time. You can answer the question. Although that is also an alternative explanation for how that can be read, it's also reasonable the way the immigration judge read it as an inconsistency. And under the deferential standard, should be deferred to. But in regards to the corroboration claim, the immigration judge, in her mind, had two very significant inconsistencies, one about the letter and two about this. And then once those inconsistencies surfaced, and particularly doubts about the pastor's letter, it was correct for her to require corroboration to clarify these incidences. If this Court has any further questions, I'd gladly answer them. Otherwise, I'll briefly conclude. Does anyone? All right. Thank you. This case will be submitted. Jennifer Solder is submitted. United States v. Duarte Celestino is previously submitted as of today. United States v. Salcido, previously submitted as of today.
judges: Wardlaw, Callahan, Beistline